**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

------------------------------------------------------- X
| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| NEOPS HOLDINGS, LLC | : | CASE NO. 17-31017 |
| | : | |
| NEW ENGLAND ORTHOTIC & PROSTHETIC SYSTEMS, LLC | : | CASE NO. 17-31018 |
| | : | |
| NEW ENGLAND O&P NEW YORK, INC. | : | CASE NO. 17-31019 |
| | : | |
| BERGMAN ORTHOTICS & PROSTHETIC, LLC | : | CASE NO. 17-31020 |
| | : | |
| SPINAL ORTHOTIC SYSTEMS, LLC | : | CASE NO. 17-31021 |
| | : | |
| CARLOW ORTHOPEDIC & PROSTHETIC, INC. | : | CASE NO. 17-31022 |
| | : | |
| Debtors | : | |

------------------------------------------------------- X

**MOTION TO APPROVE ORDERS AUTHORIZING USE OF CASH COLLATERAL AND BORROWING PURSUANT TO 11 U.S.C. §§ 105, 363(b)(1), 363(c), 364(c), AND 364(d) WITH PRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATE**

NEOPS Holdings, LLC ("Holdings") New England Orthotic and Prosthetic Systems, LLC ("NEOPS"), New England O&P New York, Inc., Bergman Orthotics & Prosthetics, LLC, Spinal Orthotic Systems, LLC, and Carlow Orthopedic & Prosthetic, Inc. LLC, debtors-in-possession (collectively, the "Debtors"), respectfully move for preliminary and final orders for authority to use cash collateral and to obtain post-petition financing pursuant to 11 U.S.C. §§ 105, 363(b)(1), 363(c), 364(c), and 364 (d), and upon information and belief, and in support thereof, as follows:

1.      On July 11, 2017 (the "Petition Date"), the Debtors filed their voluntary petitions

for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties and assets as debtors in possession.  No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 11 cases and this Motion are proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a Core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 361, 362 and 363.

## I. BACKGROUND INFORMATION

4. NEOPS is a leading provider of state-of-the art orthotic and prosthetic ("O&P") patient care products and services.  NEOPS was founded in 1998 with the purpose of creating a more "practitioner and patient friendly" O&P company in the under-penetrated New England market.  NEOPS focuses on the custom O&P market rather than generic off-the-shelf products and provides numerous patient services including orthotics, prosthetics, compression therapy, cranial orthosis, and in-service presentations.

5. NEOPS operates 21 locations across Connecticut, Massachusetts, New York, and Rhode Island with additional supply service cabinets at hospital and physician clinic locations. The Debtors are headquartered in Branford, Connecticut, where the central office, billing compliance and fabrication facility are located.

6. The Debtors have assets with a book value of approximately $19,300,000,

including $11,800,000 of intangible assets, and liabilities of approximately $17,300,000.

7. Just prior to the Petition Date, the Debtors had a work force of approximately 130 employees.

## II. PRE-PETITION SECURED CREDITORS

8. Pursuant to that certain Revolving Credit and Term Loan Agreement Loan Agreement dated as of May 4, 2012, First Niagara Bank, N.A. ("*First Niagara*") provided Holdings and NEOPS a Revolving Credit Loan in the maximum principal amount up to $4,000,000, and a Term Loan in the original principal amount of $8,000,000. As of the Petition Date, the principal amount outstanding on the revolving loan is $3,900,000, and the principal amount on the term loan is $920,000 (plus any interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "*First Lien Obligations*"). In the fall of 2016, KeyBank, National Association ("*KeyBank*") succeeded to First Niagara's interest in the First Lien Obligations as a result of Key Bank's acquisition of First Niagara.

9. On November 6, 2013, F.N.B. Capital Partners, L.P. ("*FNB*") loaned $4,000,000 to Holdings and NEOPS, as evidenced by that certain Senior Subordinated Promissory Note dated November 6, 2013. As of the Petition Date, the principal amount outstanding to FNB is $4,775,000 (plus any interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof). On November 6, 2013, Edward Epstein ("Epstein") loaned $1,000,000 to Holdings and

NEOPS, as evidenced by that certain Senior Subordinated Promissory Note dated November 6, 2013. As of the Petition Date the amount outstanding to Epstein is $1,993,300 (plus any interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "*Second Lien Obligations*"). The notes held by FNB and Epstein are collectively referred to as the "*Second Lien Notes*."

10.  Prior to the Petition Date, Holdings and NEOPS granted (a) first priority security interests in and liens on substantially all their prepetition assets (the "*Prepetition Collateral*") to First Niagara (the "*Prepetition Senior Liens*"); and (b) second priority security interests in and liens on the Prepetition Collateral to the holders of the Second Lien Notes (to the extent such liens are valid and properly perfected, the "*Prepetition Junior Liens*"). FNB and Epstein share the Prepetition Junior Liens *pari passu*. As set forth below, the relief sought pursuant to this motion will address the Debtors' critical liquidity needs to aid and assist the Debtors in preserving and maintaining their asset and market position and their going concern value. If the Debtors are prevented or delayed in providing to their customers and employees the same attention and services as they had provided before the Petition Date, the Debtor' businesses will be jeopardized, and their efforts to reorganize will be irreparably impaired.

11.  Prior to the Petition Date, pursuant to that certain Loan Purchase Agreement dated July 10, 2017, between KeyBank and AHM NEOPS Acquisition, LLC ("*AHM*" and together with its successors and assigns, the "*DIP Lender*"), KeyBank sold, assigned, transferred, and conveyed to AHM, and AHM purchased and accepted from KeyBank, all of KeyBank's right,

title, and interest in, under and to the Prepetition Seniors Obligations, Prepetition Senior Loan Documents, and Prepetition Senior Liens. The DIP Lender intends to become the owner of the Debtors through the Chapter 11 process and a plan of reorganization, yet to be proposed, confirmed by this Court.

### III. RELIEF REQUESTED

12. Prior to the Petition Date, the Debtors generally met their cash needs with funds generated from operations, financing, and investments. The Debtors' businesses have recently been affected by a number of business and operating factors that have reduced cash flow to the point that, without the advances sought by this Motion, the Debtors would be unable to continue to operate in the ordinary course. For that reason, the Debtors need to apply for the continued use of cash collateral and post-petition financing expedited basis.

    A.    **Use of Cash Collateral**

13. The Debtors request the authority to use the cash collateral in accordance with the budget attached hereto as **Exhibit A** (the "Budget") to fund its ongoing operations.

14. Approval of the use of cash collateral on the terms identified in this motion is in the best interests of the Debtors, the estates, and creditors. The use of cash collateral will enable the Debtors to pay post-petition obligations and preserve the integrity of their operations while they continue to fulfill orders and provide their customary high-quality service to customers. Absent the use of cash collateral, the Debtors' ability to continue their operations in the ordinary course would be jeopardized. In addition to the adequate protection afforded by the continuation of the Debtors' normal business operations, the Debtors propose, subject to any liens granted pursuant to this Motion, to give each holder of a pre-petition lien a replacement lien to the same

extent, priority, and validity the claimant held prior to the Petition Date, including to FNB and Epstein, notwithstanding that the Debtors believe that FNB and Epstein are unsecured within the meaning of 11 U.S.C § 506.

### B.     Post-Petition Financing

15.     Pending a final hearing on this motion, the Debtors seek immediate financing to augment their ability to pay rent and salaries, to purchase supplies, and for other operational and working capital needs to continue operations uninterrupted.  Absent financing for their business operations, the Debtors' continuing operations may be negatively impacted.  Consequently, if interim relief is not granted, the Debtors' going concern value may be immediately and irreparably jeopardized to the detriment of the estates, the creditors, and all other parties in interest.

16.     To date, the Debtors have been unable to obtain funding on any other basis more beneficial to the estate than that proposed herein.  The Debtors note that without sufficient assets to provide as collateral, the Debtors' ability to obtain financing from any conventional source at this time would be unlikely.

17.     It is the business judgment of the Debtors that the terms of this financing facility, when taken as a whole, provide the Debtors with the most preferable terms for post-petition financing.  Attached hereto are the Line Letter, Grid Note, Security Agreement, and Guaranty substantially in the form of **Exhibits B-E**, into which the Debtors propose to obtain secured, superpriority postpetition financing.

18.     A proposed interim financing order that the Debtors have negotiated with the DIP Lender is also attached hereto as **Exhibit F**.

19. The proposed order provides, among other things, to grant the DIP Lender a first position security interest in all of the Debtors' assets to secure a DIP in an amount up to one million two hundred thousand dollars ($1,200,000), in cash and/or goods, superior to all other creditors, subject only to certain express carve outs in favor of the Debtors' professionals in amount of up to $100,000, employee wages, and quarterly fees due to the United States Trustee, in and upon all of the existing and future assets and property of the Debtors and their estates pursuant to 11 U.S.C. §§105, 363(b)(1), 363(c), 364(c), and 364(d). The financing order also provides representations and/or waivers regarding liens, and interests and claims of AHM and its priority of the First Lien Obligations over the Second Lien Obligations, modification of the automatic stay under § 362 to implement the terms and conditions of any financing agreement and/or order entered by the Court, reporting requirements administrative claims under § 364(c)(1), and events of default and consequences therefore. **ALL PARTIES IN INTEREST ARE DIRECTED TO REVIEW THE PROPOSED ORDER ANNEXED HERETO AS EXHIBIT E FOR THE SPECIFIC TERMS, CONDITIONS, AND REPRESENTATIONS AND ARE PUT ON NOTICE THAT THE DEBTORS MAY REQUEST ADDITIONAL TERMS AND CONDITIONS AT THE HEARING ON THIS MOTION.**

20. Because the Debtors are unable to obtain unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense in an amount sufficient to meet their working capital needs from other sources, the Debtors believe that a new borrowing facility on the terms acceptable to the Debtors is permissible within the meaning of 11 U.S.C. §§ 364(c) and (d).

21. The Debtors further believe that authorizing them to enter into the post-petition

borrowing facility is in the best interest of these estates and all creditors and should be approved as essential to the Debtors' businesses to allow them the opportunity and ability to maximize value and minimize the disruption to their business affairs, which otherwise result without this financing. The Debtors submit that the proposed financing orders will increase the likelihood that they will successfully reorganize and preserve and enhance their assets, business, and goodwill reputations of the Debtors.

22.     Accordingly, by this motion, the Debtors request, pursuant to Federal Rule of Bankruptcy Procedure 4001, that the Court allow interim approval of the Debtors' use of cash collateral and obtaining financing in the form of the interim order, which will permit the Debtors to incur loans and to use cash collateral in an amount sufficient to meet the Debtors' interim needs, in accordance with the Budget, pending the final hearing on this motion; and that the Court schedule a final hearing on the Final Order on a date no earlier than sixteen (16) days from the date hereof.

23.     The Debtors anticipate submitting a final order authorizing post-petition financing prior to the final hearing on this motion that that may have terms, conditions, and representations in addition to or which supplement those contained in the proposed order.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the proposed interim order; (ii) scheduling a final hearing on this Motion no later than July 27, 2017; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: July 11, 2017 at Bridgeport, Connecticut.

        THE DEBTORS,

        NEOPS HOLDINGS, LLC,
        NEW ENGLAND ORTHOTIC AND
        PROSTHETICS SYSTEMS, LLC,
        NEW ENGLAND O&P NEW YORK, INC.,
        BERGMAN ORTHOTICS & PROSTHETIC, LLC,
        SPINAL ORTHOTIC SYSTEMS, LLC, and
        CARLOW ORTHOPEDIC & PROSTHETIC, INC.

By:  /s/James Berman
      James Berman, Esq. (ct06027)
      Joanna M. Kornafel (ct29199)
      Zeisler & Zeisler, P. C.
      10 Middle Street, 15th Floor
      Bridgeport, CT  06604
      Tel: (203) 368-5840
      Email: jberman@zeislaw.com
             jkornafel@zeislaw.com

Their Attorneys